IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. MICHAEL WILLIAMS, | ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | 03 C 1437 |
| EDWIN R. BOWEN, Warden Centralia Correctional Center, | ) ) ) ) | Judge Ronald A. Guzmán |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Michael Williams ("Williams") is in the custody of Respondent Warden of the Centralia Correctional Center, Centralia, Illinois. In 1996, Williams was convicted in state court of first degree murder and was sentenced to forty years in prison. Williams seeks a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons stated below, this Court denies Williams' petition.

## FACTUAL BACKGROUND

In habeas corpus actions, the Court presumes that the factual determinations of the state court are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). Williams has not presented clear and convincing evidence to rebut this presumption. Therefore, the Court adopts the facts as set forth by the Illinois Appellate Court in *People v. Williams*, 692 N.E.2d 723, 725-28 (Ill. App. Ct. 1998).

During the night of August 27, 1994, and the early morning of August 28, Turonica

Williams held a party at her home in Chicago. The guests included members of neighborhood gangs, including the Titanic Black P-Stones ("TBPS") and its rival gangs, the Conservative Vice Lords ("CVL") and the Renegade Vice Lords. At some point during the party, there was a incident in which a member of TBPS and a member of CVL bumped into each other and words were exchanged. Two or more CVL members then left the party, stating something to the effect that they'll "be back." Soon after, two to four people dressed in black arrived outside the party and began firing guns. The victim, an alleged TBPS member, was fatally shot. Williams and another defendant were indicted for the murder, and the matter proceeded to simultaneous jury trials.

At trial, four eyewitnesses to the shooting incident testified for the State. Among the eyewitnesses was Scott Tyler. During initial conversations with police, Tyler did not name Williams as one of the shooters. However, Tyler later identified Williams in a police lineup as one of the gunmen. At trial, Tyler testified that he saw four shooters and again identified Williams as one of the gunmen. Tyler also testified that his initial reservations were caused by his concern for relatives that lived in the area, given the number of CVL members in the neighborhood.

In January 1996, a jury found Williams guilty of first degree murder. Williams then filed a motion for a new trial arguing that the State failed to prove him guilty beyond a reasonable doubt and that newly discovered evidence warranted a new trial. In May 1996, the trial court conducted a hearing and heard argument on Williams' post-trial motions. Williams presented new evidence in the form of testimony from five witnesses. At the conclusion of the hearing, the trial court denied Williams' motion for a new trial and sentenced him to forty years of imprisonment.

Williams appealed to the Illinois Appellate Court and raised four issues. (Resp't's Ex. A

at 1.) First, Williams claimed he was entitled to a new trial based on the newly discovered evidence presented at the post-trial hearing. Second, he claimed he was denied his constitutional right to a fair and impartial jury because the trial judge did not, *sua sponte*, question the venire regarding prejudice against gang membership. Third, Williams contended that the prosecutor's closing argument improperly appealed to the emotions of the jury and referred to evidence not presented at trial. Finally, Williams claimed that his trial counsel was constitutionally ineffective for failing to request that potential jurors be questioned about prejudice toward gang members and for failing to object to improper remarks in the prosecutor's closing argument. The appellate court affirmed the conviction, disagreeing with Williams on all points. *Williams*, 692 N.E.2d at 728-32. Williams then filed a petition for leave to appeal with the Illinois Supreme Court raising essentially the same issues. (Resp't's Ex. E at 3-4.) The Illinois Supreme Court denied Williams' petition. (Resp't's Ex. F.)

In November 1998, Williams filed a post-conviction petition in the trial court. His petition raised four issues. (Resp't's Ex. G at 1-2.) First, he argued that he was denied due process and was entitled to a new trial because four of the prosecution's witnesses recanted their trial testimony and two additional witnesses were found to corroborate the recantations, thus establishing Williams' actual innocence. Second, Williams claimed that the trial judge's failure to question potential jurors about bias against gang membership denied Williams his constitutional right to a fair and impartial jury. Third, Williams asserted that the prosecutor's closing argument was improper and inflammatory and therefore deprived Williams of due process. Fourth, Williams claimed that his trial counsel was ineffective for failing to request that potential jurors be questioned about prejudice toward gang members and for failing to object to improper remarks in the prosecutor's closing argument. Following an evidentiary hearing, the

trial court denied the post-conviction petition.

Williams appealed the denial of post-conviction relief to the Illinois Appellate Court. (Resp't's Ex. G at 2.) In that appeal, Williams raised three issues regarding whether: (1) he was deprived of due process and entitled to a new trial because the recantation testimony established his actual innocence, (2) he had a constitutional right to have the credibility of the witnesses' recanted testimony determined by a jury in this case, and (3) the trial judge wrongly dismissed his post-conviction claims regarding insufficient voir dire, prosecutorial misconduct and the ineffective assistance of counsel claim. The appellate court affirmed the denial of post-conviction relief. (Resp't's Ex. J at 16.) The appellate court noted:

> ... the recanting witnesses contradicted their own affidavits. In its ruling on [the] post conviction hearing, the court noted specific inconsistencies in the witnesses' hearing testimony and their submitted affidavits. The court also found it significant that the witnesses could not recall much of their trial testimony. The court's ruling was based on the lack of credibility of the testimony given at the hearing itself compared to the affidavits submitted and the earlier trial testimony.

(Resp't's Ex. J at 12-13.)

Williams then filed a petition for leave to appeal with the Illinois Supreme Court raising three issues as to whether: (1) the appellate court's decision affirming the trial courts judgment not to grant a new trial was contrary to Illinois law; (2) Williams' constitutional right to a fair and impartial jury was violated when the judge, rather than a jury, determined the credibility of the recanting testimony; and (3) the appellate court properly relied upon the principle of *res judicata* to reject Williams' remaining post-conviction issues. (Resp't's Ex. K at 3-4.) The Supreme Court of Illinois denied Williams' petition. (Resp't's Ex. L.)

On February, 2003, Williams filed the instant habeas corpus petition. In his petition, Williams presents five claims. First, Williams contends that newly discovered evidence of

4

corroborating witnesses as well as recantation by the state's witnesses establishes his actual innocence. Second, Williams claims that the ruling of the trial and appellate court as to the credibility of the recantation testimony violates Williams' constitutional rights. Third, Williams asserts that his right to be tried by a fair impartial jury was denied due to the failure of the trial court to inquire during voir dire about the possible prejudice of prospective jurors toward gang membership. Fourth, Williams claims that remarks made by the prosecuting attorney during closing arguments denied Williams a fair trial and denied him due process of law. Finally, Williams contends that his attorney was ineffective for failing to inquire of prospective jurors about possible prejudice against gang membership and failing to object to remarks made by the prosecuting attorney.

## DISCUSSION

Williams' petition for writ of habeas corpus is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

### I. Procedural Default

Before the Court addresses the merits of the claims raised, it must first determine whether Williams exhausted his available state remedies. *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000). Claims must first be fully and fairly presented to the state courts. *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). To fulfill this requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To satisfy "one complete round" of appellate review in Illinois, petitioner

must present his claims on either direct appeal or post-conviction review at each stage of the appellate process, including the Illinois Supreme Court. *Id.* at 847-48; *see White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (applying the rule in the context of post-conviction proceedings). Issues that are not carried through an entire round of appellate review are procedurally defaulted and cannot be reviewed in a federal habeas proceeding. *O'Sullivan*, 526 U.S. at 848.

Procedural default may be excused, however, if the petitioner can show one of two exceptions. First, an issue will not be barred if the petitioner demonstrates good cause for the default and actual prejudice resulting from the application of the doctrine. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Second, the petitioner can obtain review of the merits of an otherwise defaulted claim by demonstrating that the failure to consider the claim will result in a fundamental miscarriage of justice. *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). A fundamental miscarriage of justice occurs when a constitutional violation results in the continued incarceration of a party who is actually innocent. *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000).

Respondent asserts that Williams' claim that the "Trial and Appellate Courts erred on credibility" is procedurally defaulted. Williams states in the "Supporting Facts" section of his petition that:

> [t]he ruling of the Trial and Appellate Court as to the credibility of the recantation testimony of the only witnesses against petitioner violates his right to due process and equal protection of the laws. The petitioner has a constitutional right to have [the] credibility of the witness presented testimony determined by jury in this case when no other evidence linked petition[er] to [the] crime at trial and where there is substantial doubt as to which version of the witnesses testimony is truthful and when said testimony establishes petitioner's actual innocence.

(Habeas Pet. at 5.) In his appeal of the denial of his post-conviction petition, Williams presented the following argument:

6

> [B]ecause Williams's conviction rests squarely upon the credibility of the eyewitnesses and, at a minimum, substantial doubt exists as to which version of the witnesses' testimony is true, the circuit court should have granted a new trial so that a *jury* could evaluate the credibility of the witnesses .... Indeed, Williams's constitutional right to a fair and impartial jury requires that a jury make this factual determination.

(Resp't's Ex. G at 16 (emphasis in original)). Similarly, in the motion for leave to appeal to the Illinois Supreme Court, the argument was presented as:

> An essential feature of our justice system's guarantee of a fair and impartial jury is that juries - not judges - decide whether witnesses are credible .... Accordingly, in cases like this - where the only evidence linking a defendant to a crime is the testimony of witnesses who have recanted that testimony in a post-conviction proceeding and there is substantial doubt as to which version of the witnesses' testimony is true - the defendant's constitutional right to a fair and impartial jury requires that a new trial be granted.

(Resp't's Ex. K at 18). It is clear from the similar language that the issue stated in the habeas petition is the same as the one presented to the state courts. Although the constitutional violation was presented differently in this petition, it is essentially the same argument. *See, e.g., In re Murchison*, 349 U.S. 133, 136 (1955) (holding that the Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the right to a "fair trial in a fair tribunal."). Moreover, a more lenient standard of drafting is appropriate when considering a *pro se* petition. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Therefore, the question as to whether having a judge rather than a jury determine the credibility of recanting witnesses violated Williams' constitutional rights was properly presented to the state courts, and the Court will decide this issue on its merits.

## II. Merits of the Petition

To state a basis for federal habeas corpus relief under AEDPA, Williams must show that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable

7

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *see also Lindh v. Murphy*, 96 F.3d 856, 861 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997).

"A state court decision is 'contrary to' Supreme Court precedent 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or 'if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court].'" *Dixon v. Snyder*, 266 F.3d 693, 700 (7th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). An "unreasonable application" of clearly established Supreme Court law occurs when the state court applies the correct legal rule in an objectively unreasonable manner. *Williams*, 529 U.S. at 409-10.

## A. New Evidence

Williams' first claim is that the post-trial recantation of the State's four witnesses and the affidavits of two additional people who say that the circumstances were such that it would have been impossible for the state's witnesses to have identified Williams as the shooter tend to establish his actual innocence of the crime. "As a general rule, newly discovered evidence that bears only on the question of guilt or innocence is not reviewable by a federal court on a motion for habeas corpus relief." *Coogan v. McCaughtry*, 958 F.2d 793, 801 (7th Cir. 1992). "[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the

8

underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact." *Id.*

There are exceptions to this general rule, however, where the "discovered evidence is so compelling that it would be a violation of the 'fundamental fairness embodied in the Due Process Clause' not to afford a defendant a new trial" such as "any showing that the prosecution knowingly proffered false testimony or failed to disclose exculpatory evidence." *Coogan*, 958 F.2d at 801.

Williams' contention that the courts erred by failing to grant him a new trial based on this new evidence fails to point to any independent constitutional violation. Williams does not demonstrate that the courts' decisions are contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Freestanding claims of innocence of this sort are not actionable for habeas corpus relief. *Herrera*, 506 U.S. at 405. Therefore, Petitioner's habeas claim based on newly discovered evidence is denied.

### B. Courts' Rulings on the Credibility of Recantation Testimony

The second claim presented is that the rulings of the trial and appellate courts as to the credibility of the recantation testimony violate Williams' constitutional rights. Again, to form the grounds for federal habeas corpus relief, the courts' rulings must have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

There is no precedent to support the contention that the right to a jury trial should extend to proceedings to determine whether to grant a new trial. Petitioner's arguments to the state

9

courts questioned the courts' application of state case law and provided numerous policy arguments for adopting a new standard in Illinois but failed to point to any Supreme Court precedent in support of that position. (Resp't's Ex. G at 32-37; Resp't's Ex. K at 16-18.)

As the Supreme Court noted in *Herrera v. Collins*, "[t]he Constitution itself . . . makes no mention of new trials." 506 U.S. at 408. The courts' ability to grant new trials was originally founded in common law and was slowly replaced by state statutes. *Id.* at 409-10. There is not a single standard used by the states to determine when to grant a new trial. *Id.* at 410. Moreover, the state post-conviction relief process is not required by any constitutional provision or federal law. *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996). "Federal habeas corpus relief is available only to persons being held in state custody in violation of the Constitution or federal law; it is not a remedy for errors of state law." *Id.* Therefore, Williams has failed to demonstrate that the courts' adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, relief on this ground must be denied.

### C. A Fair and Impartial Jury

Third, Williams' asserts that his right to be tried by a fair, impartial jury was denied due to the failure of the trial court to inquire during voir dire about the possible prejudice of prospective jurors toward gang membership. Federal law does not require a trial court to inquire *sua sponte* about the possible prejudice of prospective jurors toward gang membership. *Gardner v. Barnett*, 199 F.3d 915, 921-22 (7th Cir. 1999) (en banc) (citations omitted). In the words of the Seventh Circuit: "The conduct of voir dire is left to the trial court's sound discretion. The

10

litigants do not have a right to have a particular question asked. Although the Constitution does require inquiries into certain biases (such as race), bias against street gangs is not among them." *Id.* (citations omitted).

Williams has failed to establish that the trial court's failure to inquire during voir dire about the possible prejudice of prospective jurors toward gang membership was either contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Therefore, habeas corpus relief on these grounds is denied.

### D. Prosecutorial Misconduct

Fourth, Williams asserts that remarks made by the prosecuting attorney during closing arguments denied Williams a fair trial and due process of law. The relevant portions of the State's closing argument are as follows:

This is a case about good and evil.

. . .

This is evil. This is Raymond Malone after he encountered Michael Williams and [Hodby], after they brutally in cold blood executed him . . . .
That's the value they placed on human life . . . .

. . .

You know from what happened out there on August 28 that we are dealing with evil, wicked, vicious people, and [Scott Tyler] would . . . have been remiss if he didn't make sure that his loved ones were safe before he took that act of courage and came forward and identified the killers in this case.

. . .

What your duty in this case is to [sic] decide--to send a message to the likes of Michael Williams and to say we are governed by the rule of law. We do believe in a society where things are decided in courtrooms and not on the street.

11

> . . .
>
> [Defendant] didn't do it on LaSalle Street, and he didn't do it in the suburbs. He did it in Russell Square Park . . . at a party that had a lot of gang members present, and he did it at a time of night when the gang members are taking over the street. And there are nice people in that neighborhood. . . . But those people are under their beds at 1:25 in the morning. They're watching for the bullets to come through the windows because you don't even have to go out on the street to get shot . . . and there's nine hundred murders in this city every year, and about seven hundred of them are just like this, and the witnesses aren't a heck of a lot better than the guys who pull the triggers.

*Williams*, 692 N.E.2d at 731.

Under Supreme Court precedent, it is not enough that the prosecutor's remarks were "undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotations omitted). To aid in determining whether the remarks constituted a fundamental unfairness, *Darden* sets forth five factors: "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000). "These factors . . . are not to be applied in a rigid manner, but should be used as a guide to determine whether there was fundamental unfairness that infected the bottom line . . . ." *Hough v. Anderson*, 272 F.3d 878, 903 (7th Cir. 2001).

The Illinois Appellate Court evaluated the impact of the prosecutor's arguments using the Illinois common law standard that "the complained-of argument must have resulted in a substantial prejudice to the defendant, such that, absent those comments, the result would have been different." *Williams*, 692 N.E.2d at 731. The appellate court held that although it

disapproved of the prosecutor's arguments, which depicted Petitioner as evil and urged the jury to send a message, the statements, when viewed in the context of the entire closing arguments, were harmless. *Id.* at 731-32. Furthermore, the court held that there was no support for Williams' claim that the State remarked that Williams engaged in acts to intimidate its witness, Scott Tyler. *Id.*

In determining whether federal habeas corpus relief is appropriate, the first question is whether the law applied by the appellate court is contrary to Supreme Court precedent. As previously noted, a state court decision is contrary to clearly established federal law if the court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams*, 529 U.S. at 405. In this case, the standard used by the appellate court is substantially similar to the Supreme Court standard expressed in *Darden*. *See United States ex rel. Washington v. Page*, 981 F. Supp. 1097, 1099 (N.D. Ill. 1997) (stating Illinois' "substantial prejudice" standard is substantially similar to the *Darden* standard).

The question, then, is whether the application was unreasonable. *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005). The determination of reasonableness is quite deferential and a state decision may stand so long as it is objectively reasonable, regardless of whether the reviewing court determines it to be substantively incorrect. *Id.* In this case, the appellate court examined the impact of the prosecutor's statements in the context of the entire closing argument and looked to whether the prosecutor included evidence not presented at trial. *Williams*, 692 N.E.2d at 731-32.

The court's analysis of the objected-to comments in comparison to the full context of the prosecutor's statements was thoughtful. The court determined that the prosecutor had not misstated the evidence or discussed any evidence not presented at trial. The court's holding that

13

the prosecutor's closing argument did not render Williams' trial fundamentally unfair was reasonable and must be honored. *See Lindh*, 96 F.3d at 871 ("[W]hen the constitutional question is a matter of degree, rather than of concrete entitlements, a 'reasonable' decision by the state court must be honored."). Accordingly, under this standard of review, the comments made by the prosecutor during closing arguments did not deprive petitioner of a fair trial. Therefore, habeas corpus relief on this claim is denied.

### E. Ineffective Assistance of Counsel

Finally, Williams contends that his trial attorney was ineffective for failing to inquire of prospective jurors about possible prejudice against gang membership and failing to object to remarks made by the prosecuting attorney.

Ineffective assistance of counsel claims are evaluated using the two-pronged test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Barrow*, 398 F.3d 597 at 603. Under the first prong, it must be shown that the performance of counsel fell outside the "range of competence demanded of attorneys in criminal cases" as determined under an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. There is a strong presumption of competence and any claim of ineffective assistance of counsel "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. The second prong of the test requires that any claim of ineffective assistance of counsel demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Illinois Appellate Court specifically applied the *Strickland* test. *Williams*, 692 N.E.2d at 732. In considering whether Williams' counsel was ineffective for failing to inquire of

prospective jurors about possible prejudice against gang membership, the court held that "tendering supplemental *voir dire* questions is a matter within the protected realm of trial strategy." *Id.* The court noted that because most of the State's witnesses were gang members, it was plausible that the defense counsel chose not to tender supplemental questions for strategic reasons. *Id.* In deciding the claim of ineffective assistance of counsel based on defense counsel's failure to object to remarks made by the prosecuting attorney during closing arguments, the court held the claim was "unpersuasive for reasons previously stated." *Id.* Previously, the court held that the prosecutor's statements were harmless and did not refer to evidence not presented in trial. *Id.* at 467-68.

Only "[a] clear error in applying *Strickland*'s standard would support a writ of habeas corpus." *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997). In this case, the appellate court reasonably held that Williams failed to overcome the presumption that the decision not to submit supplemental *voir dire* questions was part of a sound trial strategy, thereby failing the first prong of the test. *See id.* at 701. Likewise, after holding that the comments made by the prosecuting attorney during closing arguments were harmless, the court was reasonable to dispose of the claim of ineffectiveness based on the defense counsel's failure to object to those remarks for failing to meet the second prong of the *Strickland* standard. *Strickland*, 466 U.S. 668 at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). To show prejudice from ineffective assistance of counsel, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The court had already examined the statements to determine if "the

complained-of argument . . . resulted in a substantial prejudice to the defendant, such that, absent those comments, the result would have been different" and held that the statements were harmless. *Williams*, 692 N.E.2d at 732. Therefore, because the statements themselves did not result in a substantial prejudice to Williams, the failure to object to those statements does not undermine confidence in the outcome. *See Howard*, 225 F.3d at 794. Based on the record before the Court, the state court's application of the *Strickland* standard was not clearly erroneous. Accordingly, the petition for writ of habeas corpus shall not be granted on this basis.

## CONCLUSION

For the reasons set forth, the Court denies Williams' petition for writ of habeas corpus. This case is hereby terminated.

**SO ORDERED**  ENTERED: 11/29/05

_____
**HON. RONALD A. GUZMAN**
**United States Judge**